IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

JOHN STENGER,

Plaintiff,

v.

USAA CASUALTY INSURANCE COMPANY,

Defendant.

Case No. 3:25-cv-00546-AP

**FINDINGS & RECOMMENDATION**

POTTER, United States Magistrate Judge:

In 2019, Plaintiff John Stenger was injured in a car accident; the driver that hit him was underinsured. Compl., ECF No. 1-1. He brought this action against Defendant USAA Casualty Insurance Company to recover under the underinsured motorist (UIM) provision of his insurance policy and a claim for negligence based on Defendant's handling of his claim. Compl. The case was removed to this Court and Defendant has now moved to compel arbitration. Notice of Removal, ECF No. 1; Def.'s Motion to Compel, ECF No. 16. The Court recommends that the motion to compel arbitration be GRANTED and the case be STAYED pending arbitration.

## BACKGROUND

On March 11, 2019, Plaintiff Stenger was injured in a car accident. Compl. ¶¶ 4, 5. He suffered serious injuries and the driver who hit him was underinsured. Compl. ¶ 18, 23. Because of this, in 2021, Plaintiff notified his insurance company—Defendant USAA—of his claim for underinsured motorist (UIM) benefits under his plan. Consistent with his insurance policy, Plaintiff demanded arbitration of the UIM claim and Defendant agreed. Declaration of T. Eiva (Eiva Decl.) Exs. 1, 2, ECF No. 22.

Prior to arbitrating the UIM claim, Plaintiff had to litigate his claim against the other driver who was at fault. Pl. Resp. to Motion to Compel (Pl. Resp.) 2, ECF No. 21; Eiva Decl., Ex. 3. That litigation included the UIM claims which would be transferred to arbitration. Declaration of A. Denton (Denton Decl.) ¶¶ 6, 7, ECF No. 18. That litigation was resolved in March 2023 and the UIM claim against USAA was dismissed without prejudice because the claim would be resolved in arbitration. Eiva Decl., Exs. 3, 5; *see also* Denton Decl. ¶ 8.

Arbitration of Plaintiff's claim was governed by state law. Pursuant to ORS 742.505, each party must pick an arbitrator and those two arbitrators then collaborate to select a third, neutral arbitrator. On February 6, 2024, Plaintiff notified Defendant of his selected arbitrator and requested that Defendant select its arbitrator so the process could move forward. Eiva Decl., Ex. 6. Despite multiple emails to Defendant's counsel requesting to move the process along, Defendant did not notify Plaintiff of its selected arbitrator until July 30, 2024.[1] Eiva Decl., Exs. 6, 7, 8, 9, 10. And this selection came only after Plaintiff's counsel notified Defendant's counsel by letter on July 2, 2024, that Plaintiff viewed the continued failure to select an arbitrator as a default of the arbitration agreement. Eiva Decl., Ex. 9.

After the selection, the arbitrators selected by the parties began discussing who should serve as the third arbitrator. Eiva Decl., Exs. 11, 15. Unfortunately, after some initial discussion, Defendant's chosen arbitrator stopped responding to emails or calls. Eiva Decl., Exs. 11, 12. This lack of communication was the result of the arbitrator experiencing serious health problems, but it does not appear that Defense counsel notified Plaintiff of those issues or sought to appoint a different arbitrator. *See* Denton Decl. ¶ 9. In January 2025, Plaintiff's selected arbitrator reached out to Defense counsel and indicated that due to lack of response from Defendant's selected

---

[1] Counsel in this litigation is not the same counsel that was handling the request for arbitration.

arbitrator, he believed USAA was no longer interested in arbitration and asked for his $500 fee. Eiva Decl., Ex. 13. Defense counsel responded that USAA was still interested in arbitration, and he expected its arbitrator to reach out "when time allows." *Id*. No payment was rendered to Plaintiff's arbitrator, and no further information appears to have been provided by Defendant regarding the timing for arbitration or why the arbitration process had stalled. Pl. Resp. 3.

On February 25, 2025, Plaintiff filed suit in Multnomah County Circuit court to recover UIM benefits as well as seeking damages for the delay in seeking arbitration. Compl. The Complaint acknowledged that the UIM had been submitted to arbitration but alleged that Defendant had failed to participate in that arbitration. Compl. ¶ 30. Defendant removed the case to federal court in April 2025. ECF No. 1. Defendant then answered the Complaint, raising as an affirmative defense that the claims were subject to binding arbitration. Def.'s Answer, ECF No. 5. At some point after the case was filed, Defendant offered to return to arbitration and Plaintiff declined. First Read Decl. ¶ 7, ECF No. 17; *see also* Second Read Decl. ¶¶ 8-9, ECF No. 24.

The parties submitted a proposed case management order which was adopted in July 2025. ECF No. 9. After that, the parties engaged in some limited discovery. Def.'s Reply to Mot. to Compel 4, ECF No. 23. Plaintiff served requests for production and Defendant responded. Second Read Decl. ¶ 12. Defendant issued some limited third-party subpoenas. *Id.* ¶ 13. Then, in February 2026, Defendant moved to compel arbitration. Def.'s Mot. to Compel, ECF No. 16. Plaintiff opposed the motion, arguing that Defendant's repeated delays amounted to a default on the arbitration agreement. Pl.'s Resp., ECF No. 21. This Court held oral argument on Defendant's motion on August 5, 2026. ECF No. 29.

**STANDARDS**

The Federal Arbitration Act ("FAA") "governs the enforceability of arbitration agreements in contracts involving interstate commerce." *Kramer v. Toyota Motor Corp.*, 705 F.3d 1122, 1126 (9th Cir. 2013). The FAA codifies the intention that private agreements to arbitrate are "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. To that end, the question of whether parties agreed to refer a particular dispute to arbitration is "an issue for judicial determination unless the parties clearly and unmistakably provide otherwise." *Knapke v. PeopleConnect, Inc*, 38 F.4th 824, 830–32 (9th Cir. 2022) (quoting *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83 (2002)) (cleaned up). Once satisfied that a valid agreement exists, courts must "'rigorously enforce' arbitration agreements according to their terms." *Am. Exp. Co. v. Italian Colors Rest.*, 570 U.S. 228, 233 (2013) (quoting *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 221 (1985)).

The FAA "leaves no place for the exercise of discretion by a district court, but instead mandates that district courts shall direct the parties to proceed to arbitration." *Dean Witter Reynolds, Inc.*, 470 U.S. at 218. Thus, when considering a motion to compel arbitration, the court is limited to determining (1) whether a valid arbitration agreement exists, and, if so (2) whether the arbitration agreement encompasses the dispute at issue. *Capili v. Finish Line, Inc.*, 116 F. Supp. 3d 1000, 1004 (N.D. Cal. 2015), *aff'd*, 699 F. App'x 620 (9th Cir. 2017) (citing *Cox v. Ocean View Hotel Corp.*, 533 F.3d 1114, 1119 (9th Cir.2008)). If these conditions are satisfied, the court must compel arbitration. 9 U.S.C. § 4; *Zoller v. GCA Advisors, LLC*, 993 F.3d 1198, 1201 (9th Cir. 2021). Finally, when faced with questions regarding the "scope of arbitrable

issues" within an agreement, courts should resolve such questions "in favor of arbitration." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983).

Courts apply the summary judgment standard on a motion to compel arbitration because an order compelling arbitration is "in effect a summary disposition of the issue of whether or not there had been a meeting of the minds on the agreement to arbitrate." *Hansen v. LMB Mortg. Servs., Inc.*, 1 F.4th 667, 670 (9th Cir. 2021); Fed. R. Civ. P. 56. The party seeking to avoid arbitration "bears the burden of proving that the claims at issue are unsuitable for arbitration." *Green Tree Fin. Corp.–Alabama v. Randolph*, 531 U.S. 79, 91 (2000).

**DISCUSSION**

Unlike many cases involving a motion to compel arbitration, Plaintiff does not dispute that there was a binding arbitration agreement in his USAA insurance contract. Pl.'s Resp. 4-5; *see also* Compl. In fact, he agreed to arbitration at the outset and his counsel repeatedly tried to get the arbitration process moving prior to filing suit. Eiva Decl., Exs. 1-13. It was Defendant, through its counsel at the time, who repeatedly failed to notify Plaintiff of Defendant's selected arbitrator. And, once the arbitrator was selected, Defendant failed to provide information on why the delays continued. Faced with a looming statute of limitations deadline,[2] Plaintiff filed suit. Compl. Only after removal, and after the case proceeded for almost a year, did Defendant move to compel arbitration. *See* ECF Nos. 1, 9, 16.

Given the prior delays, Plaintiff now opposes arbitration. Generally, once parties agree to arbitration, they cannot change their minds and decide to pursue litigation. *See Manning v. State Farm Mut. Auto. Ins. Co.,* No. 3:24-CV-00025-IM, 2024 WL 1836442, at *3-4 (D. Or. Apr. 26,

[2] Under Oregon law, an insured has two years from the resolution of the case against the uninsured motorist to either formally institute arbitration or file an action. ORS 742.504(12)(a)(D).

2024). But if a party defaults, it can no longer seek arbitration. 9 U.S.C. § 3. Similarly, a party entitled to seek arbitration can waive their right to compel arbitration. *Hill v. Xerox Bus. Servs., LLC*, 59 F.4th 457, 468 (9th Cir. 2023).

Here, in response to Defendant's motion to compel arbitration, Plaintiff argues both default and waiver. There is no question on this record that Defendant's actions stymied Plaintiff's attempts to resolve this matter quickly through arbitration. But the question is whether Defendant's actions amounted to a default or waiver.

**I. Default**

Plaintiff first asserts that Defendant is in default due to its delays in selecting the arbitrators and beginning the arbitration process. Compl. ¶ 30. The FAA makes clear that upon request of a party, a district court shall stay the case and refer it to arbitration when there is a valid arbitration agreement "providing the applicant for the stay is not in default in proceeding with such arbitration." 9 U.S.C. § 3. Relevant to this case, a prior default precludes the defaulting party from compelling arbitration under 9 U.S.C. § 4. *See Sink v. Aden Enters., Inc.*, 352 F.3d 1197, 1201 (9th Cir. 2003).

A default is typically the result of "a failure to perform a legal or contractual duty" like paying the fees in arbitration. *Miller v. Plex, Inc.*, No. 22-CV-05015-SVK, 2024 WL 348820, at *6 (N.D. Cal. Jan. 30, 2024); *see also Sink*, 352 F.3d at 1199 (9th Cir. 2003). In the *Sink* case, the district court concluded, as a factual matter, that defendant had defaulted in the arbitration proceeding. 52 F.3d at 1199. That was a procedurally straightforward finding; in that arbitration proceeding, the defendant had missed a payment deadline, plaintiff moved for default, and the arbitrator entered an order finding defendant in default of the arbitration proceeding. *Id.* Then, the defendant moved to compel arbitration in the district court. *Id.* That request was denied

because a party who has defaulted in the underlying arbitration proceeding cannot compel arbitration. *Id.* at 1200-01.

Here, Defendant has not been found in default in any arbitration proceeding; indeed, no arbitration proceeding has begun. *See Hamby v. Power Toyota Irvine*, No. 11CV0544-BTM (BGS), 2012 WL 13036860, at *7 (S.D. Cal. Mar. 22, 2012) (finding that the arbitration has not yet begun precludes a finding of default under § 3). What Plaintiff points to is the Defendant's lengthy delay in beginning the arbitration. But a delay, particularly in the absence of specific deadlines, is not the same as a default. For example, a delay in payment—as opposed to the complete failure to pay in *Sink*—is typically not a basis for finding default. *Miller*, 2024 WL 348820, at *7.

The closest argument that a default occurred may be Defendant's failure to pay Plaintiff's arbitrator's fee—a fee he sought because he believed Defendant was no longer interested in arbitration. *Cf. Brown v. Dillard's, Inc.*, 430 F.3d 1004 (9th Cir. 2005) (finding refusal to arbitrate and failure to pay arbitration fees was breach of arbitration contract). But in response to that request, Defendant confirmed its willingness to proceed to arbitration. And the failure to pay that fee is not the reason arbitration stalled. *Cf. Caban v. Smartpay Leasing, LLC,* No. 8:17-CV-1123-T-36TBM, 2018 WL 11247851, at *4 (M.D. Fla. June 28, 2018) (finding default because the refusal to pay the fee was the reason arbitration was closed). On these facts, the Court cannot conclude Defendant was in default of the arbitration proceeding under § 3.

## II. Waiver

Even if a defendant is not in default, it can, through its actions or inactions, waive the right to compel arbitration. Waiver of the right to arbitration requires "(1) knowledge of an existing right to compel arbitration; and (2) intentional acts inconsistent with that existing

right."[3] *Hill v. Xerox Bus. Servs., LLC*, 59 F.4th 457, 468 (9th Cir. 2023). To determine if waiver applies a court must examine all of the Defendant's actions in the case. *Id.* at 471.

Here, there is no dispute that Defendant knew of the right to compel arbitration—it had agreed to arbitration and begun that process—nor is there any dispute about the facts central to this motion. The issue is whether the repeated delays in engaging in that arbitration amounts to an intentional act that is inconsistent with arbitration. *Armstrong v. Michaels Stores, Inc.*, 59 F.4th 1011, 1015 (9th Cir. 2023). "[A] party generally 'acts inconsistently with exercising the right to arbitrate when it (1) makes an intentional decision not to move to compel arbitration and (2) actively litigates the merits of a case for a prolonged period of time in order to take advantage of being in court.'" *Id.*

The waiver cases typically focus on the defendant's behavior after the litigation is filed. Here, the delays began before that. And a delay in agreeing to arbitrate can be a significant factor in finding waiver in a later court proceeding. For example, one district court concluded that "ignoring correspondence" from a plaintiff seeking to initiate arbitration was evidence of a "desire to resolve the arbitrable dispute through litigation rather than arbitration." *Leja v. Brousseau Mgmt. Co.*, 443 F. Supp. 3d 714, 718 (M.D. La. 2020). Similarly, a defendant telling a plaintiff who had requested arbitration that he "would review the matter and contact the [p]laintiff when he had time" followed by repeated refusal to respond to additional correspondence constituted waiver. *NCM Int'l, Inc. v. Cozzoli Mach. Co.*, No. 06-CV-1585 (DRD), 2007 WL 9761624, at *3 (D.P.R. Sept. 13, 2007).

---

[3] Prior to 2022, the Ninth Circuit required a party for waiver had to establish prejudice, but the Supreme Court has since jettisoned that requirement. *See Morgan v. Sundance*, 596 U.S. 411 (2022).

Here, Defendant repeatedly delayed responding to Plaintiff's request that it nominate an arbitrator. Eiva Decl., Exs. 6-11. The record shows Plaintiff reached out regularly to initiate arbitration proceedings, with no meaningful response until July 30. Eiva Decl., Ex. 10. But Defendant never indicated that they did not wish to arbitrate. In fact, Defendant continued to assert its desire to arbitrate. *See, e.g.*, Eiva Decl, Ex. 13. This pre-filing delay in moving the arbitration forward is not sufficient to amount to a waiver of the right to arbitrate.

Yet, given the delays, Plaintiff opted to file this lawsuit. And then Defendant waited almost a year after removing this case to federal court to move to compel arbitration. By the time Defendant filed its motion, the judgment dismissing Plaintiff's UIM claim to be finalized through arbitration was nearly three years past. While it is unclear to the Court why Defendant waited so long to file its motion, it cannot find that the delay in moving to compel—even combined with the initial delay—was inconsistent with arbitration. *See Gray Holdco, Inc. v. Cassady*, 654 F.3d 444, 454-55 (3d Cir. 2011) (agreeing that ten-month delay between initiating lawsuit and seeking arbitration "is not, standing alone, outcome determinative on the waiver issue here"). Taken "holistically" the actions in the federal litigation do not evidence "'a conscious decision'" to litigate the merits of the case in federal court. *Armstrong*, 59 F.4th at 1015 (citation omitted).

First, Defendant never made an intentional decision not to arbitrate. *Id.* They agreed to arbitrate from the beginning and there is no evidence that Defendant ever stated that it did not intend to arbitrate. *Cf. Martin v. Yasuda*, 829 F.3d 1118, 1125-26 (9th Cir. 2016) (finding that "extended silence and delay" can result in waiver). In fact, Defendant expressed a desire to return to arbitration once the case was filed. First. Read Decl. ¶ 7. And Defendant continued to communicate the belief that the UIM claims were subject to arbitration as the case progressed.

Second Read Decl. ¶¶ 8-9. Defendants also raised the issue of arbitration in its answer. Def.'s Answer 10-11, ECF No. 5; *cf. Martin*, 829 F.3d at 1126 (finding waiver when defendants failed to raise right to arbitrate for a year and stated they were better off in federal courts). This put Plaintiff on notice of the intention to continue to pursue arbitration. *Cf. Van Ness Townhouses v. Mar Indus. Corp.,* 862 F.2d 754, 756 (9th Cir. 1988) (finding waiver when, among other things, defendant did not raise arbitration in any of its pleadings).

Second, Defendant has not actively litigated this case in an effort to take advantage of being in court. *Armstrong*, 59 F.4th at 1015. Defendant has not filed any dispositive motions or otherwise sought a determination of the merits of the claim. *See id.* at 1015-16 (declining to find waiver when defendant moved to arbitrate within a year and never sought ruling on the merits of the case); *see also Martin*, 829 F.3d at 1125 (finding that seeking a ruling on the merits is an action is inconsistent with arbitration and citing cases). Save for agreeing to a scheduling order and engaging in what both parties agree was limited discovery, little else has occurred in the federal litigation. *See Credit Acceptance Corp. v. Davisson,* 644 F. Supp. 2d 948, 957 (N.D. Ohio 2009) (declining to find waiver based on the conducting of limited discovery and citing cases); *cf. Plows v. Rockwell Collins, Inc.,* 812 F. Supp. 2d 1063, 1067 (C.D. Cal. 2011) (finding waiver when defendant engaged in discovery not available in arbitration and otherwise engaging in litigation in federal court).

None of the cases cited by Plaintiff hold that a delay alone is sufficient to find a waiver of the right to compel arbitration. Pl.'s Resp. 9 (citing cases). All involve additional, intentional acts to engage in federal litigation instead of seeking arbitration that resulted in waiver.[4] *See Martin*,

---

[4] Plaintiff also cited *Tapley v. Cracker Barrel Old Country Store, Inc*., 448 F. Supp. 3d 1143, 1152 (D. Or. 2020), but in that case the court did not find a waiver occurred. Plaintiff had argued that defendant failed to timely provide employment records; the court found that was not

829 F.3d at 1126 (defendants litigated the case including seeking ruling on the merits and engaged in discovery before seeking to compel arbitration); *Kelly v. Pub. Util. Dist. No. 2 of Grant Cnty*., 552 F. App'x 663, 664 (9th Cir. 2014) (defendant waited eleven months and actively litigated the case before moving for arbitration); *Gray Holdco, Inc.*, 654 F.3d at 455-61 (plaintiff actively litigated case and engaged in discovery on the merits); *Plows,* 812 F. Supp. 2d at 1067 (defendant engaged in discovery not available in arbitration and otherwise engaging in litigation in federal court).

The facts in this case do not support a conclusion that Defendant engaged in the same type of intentional acts that could have resulted in waiver. *Fox v. Experian Info. Sols., Inc*., 718 F. Supp. 3d 1231, 1239 (E.D. Cal. 2024) (finding that "moving to compel arbitration within a year of the filing of plaintiff's complaint, in combination with never seeking or obtaining a ruling on the merits, has been found by the Ninth Circuit to indicate no waiver of the right to arbitrate" (citing *Armstrong*, 59 F.4th at 1016)). The parties jointly submitted a scheduling order to the Court. ECF No. 9. Defendant filed its motion to compel arbitration approximately seven months later after only limited discovery and no other litigation. ECF No. 16. And its motion was filed before the close of discovery, or any dispositive motions were due. *See* ECF No. 9.

Defendant did not "wait to exercise th[e] right to [compel arbitration] until the parties [had] expended a significant amount of time and money to litigate that dispute in federal court." *Kelly*, 552 F. App'x at 664. Better communication on Defendant's part would undoubtedly have avoided many of the delays in case, but it is difficult to conclude that those delays amount to a "conscious decision" to seek a ruling on the merits in the case in court as opposed to arbitration.

---

sufficient to amount to waiver. Certainly, in that case, defendant filed the motion to compel almost immediately. But no court has held that immediate filing of the motion to compel is required.

*See Martin*, 829 F.3d at 1125. Nor does there appear to be any effort on Defendant's part to take advantage of the federal litigation. *Hill*, 59 F.4th at 468 (citing *Martin,* 829 F.3d at 1125). Absent those types of facts, the delay in this case is not sufficient to find that Defendant waived its contractual right to arbitrate.

### III. Negligence Per Se Claims

At oral argument. both parties agreed that if the Court ultimately granted the motion to compel arbitration, the negligence per se claims should be stayed pending the outcome of the arbitration. The Court agrees. *See Smith v. Spizzirri*, 601 U.S. 472 (2024); *see also Manning*, 2024 WL 1836442, at *4.

## RECOMMENDATION

Defendant's Motion to Compel Arbitration (ECF No. 16) should be GRANTED and the case STAYED pending the outcome of the arbitration of the UIM claims.

## SCHEDULING ORDER

The Findings and Recommendation will be referred to a district judge. Objections, if any, are due fourteen (14) days from service of the Findings and Recommendation. If no objections are filed, then the Findings and Recommendation will go under advisement on that date.

A party's failure to timely file objections to any of these findings will be considered a waiver of that party's right to de novo consideration of the factual issues addressed herein and will constitute a waiver of the party's right to review of the findings of fact in any order or judgment entered by a district judge. These Findings and Recommendation are not immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to Rule 4(a)(1) of the Federal Rules of Appellate Procedure should not be filed until entry of judgment.

DATED this 13th day of August, 2026.

/s/Amy E. Potter
AMY E. POTTER
United States Magistrate Judge